[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 63-P
Plaintiff Reiff Family Limited Partnership, ("Reiff") brings this action against the defendants David J. Sulvester and Christine Passaro Sulvester, ("Sulvesters") on the grounds of "tortious interference with business expectancy."
The defendants, Sulvesters, deny plaintiffs' allegations and claim for damages in numerous counts based upon warranty, express and implied, as well as violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq.
The facts relevant and material to the issues herein involved are,
The plaintiff is a family partnership engaged in developing land for residential building lots which it sells together with houses thereon, which it proposes to build for the buyer. The house it proposed to build is similar to models available for viewing by the prospective buyer.
At the time period involved herein the plaintiff had sold approximately 100 lots and built homes thereon and was continuing its efforts in the sale of the remaining 70 lots. CT Page 63-Q
The family members directly involved in the operation of the plaintiff partnership were: Douglas Reiff, the managing general partner; his sister, Marcy D'Angelo who handled the advertising and sales; and, their father Donald Reiff who was secretary of the partnership and was construction overseer.
The plaintiffs' program for sales of the lots was preceded by an advertising campaign in several publications in the immediate area of the development. The advertising was directed toward prospective house buyers to appear at weekend inspections of the development, the available building lots and model homes that the partnership was prepared to build. Representatives of the developer were available on the premises, to show the lots and the model home, to answer questions and to arrange for the purchase of these properties.
On the first and second weekend of the plaintiffs' selling campaign in October 1995, the defendants, Sulvesters, set up a large 4' x 8' sign on the front yard of their home within the plaintiffs' development informing passerbys that their home had numerous problems which had not been corrected in over 5 months. Responsibility for this failure to repair was not assigned to anyone, nor was there any suggestion that the plaintiff herein was the responsible party to make these repairs. However, since CT Page 63-R the plaintiff was the only entity involved with the development the implication was, to even the most casually interested person, that the plaintiff was directly or indirectly the one about whom the sign referred.
Also, the defendants openly expressed their dissatisfaction to neighbors and city officials. Thus, the sign's purpose was to inform the plaintiff and others of the defendants' dissatisfaction with certain aspects of their house.
The plaintiffs' October 1995 selling campaign was terminated after the second weekend even though it was scheduled to continue through the remainder of the month. During the two weekends of plaintiff's selling campaign numerous buying prospects appeared at plaintiffs' model home but no sales were made. Plaintiff claims that these open house campaigns, previously produced an average of four sales each weekend. That, the defendants' sign so adversely affected the campaign that no sales contract was entered into.
The defendants admit that the sign was intended to bring to the plaintiffs' attention the problems with their house. That this was done only after receiving no response to their complaints.
The plaintiff pointed out that it had responded to the items CT Page 63-S that needed attention. That defendants wrote up a check list of items to be corrected at the time of the closing. That additional complaints were addressed subsequently including those suggested by the city building inspector.
The plaintiff contends that its inability to sign up any purchase agreements in October resulted from the posting of the sign by the defendants. The defendants deny this, but, contend that even if their sign contributed to the lack of sales by the plaintiffs, what they wrote on their sign was true and that publicizing the truth limits its liability to the plaintiffs.
The court finds that the defendants did in fact erect the sign with the intent of interfering with plaintiffs' sales campaign. That, the sales campaign was adversely affected by the posting by the defendants of the sign and that the plaintiffs were damaged to a minor extent because of the sign. However, the location of the sign was such that only one prospective buyer was aware of it.
The court further finds that although the defendants' sign merely publicized their dissatisfaction with the failure to receive a response to their complaint, the intent by the defendants in posting the sign was to adversely affect the plaintiffs' sales campaign and thus there was an interference CT Page 63-T with the legitimate business expectancy of the plaintiff.
Therefore, the court finds for the plaintiff as to Count One; and, for the defendants as to the remaining count of the complaint.
To the extent that the sign may have had an adverse impact upon a potential sale the court finds that the plaintiff was damaged in the sum of $2,000.00.
As to the defendants' Second Amended Counterclaim, the court finds for the counterclaim defendants regarding the violations of express and implied warranties in Counts 1, 2, 3, 4, 6, 7, 8 and 9; and for the counterclaim plaintiffs in Count 5.
The court notes that various construction defects required attention from the plaintiff developer, such as wall board nails protruding, plaster cracks, basement floor crack, unfinished painting, etc. Landscaping required some attention as to tree stumps not removed and large rocks exposed. That these defects were for the most part minor and did not affect the use of the house as a home except to the extent that these final items were not completed by the developer. It also affected the esthetics of a newly built home and reduced the buyers' satisfaction with and their enjoyment of their new house. CT Page 63-U
For these reasons the court finds that the counterclaim plaintiffs were damaged to the extent of $2,000.00.
Therefore, judgment may enter for the plaintiffs as to Count One of the Complaint, and for the Defendants as to Count Two of the Complaint in the sum of $2,000.00.
Further, judgment may enter as to the Second Amended Counterclaim for the counterclaim plaintiffs as to Count Five; and for the counterclaim defendants as to the remaining counts of the Second Amended Counterclaim in the sum of $2,000.00. No costs are assigned to either party.
JULIUS J. KREMSKI JUDGE TRIAL REFEREE